UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MARK SLAY (#102451)**                                **CIVIL ACTION**

**VERSUS**

**RAMAN SINGH, ET AL.**                                **NO. 16-0756-SDD-EWD**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 8, 2018.

                                        **ERIN WILDER-DOOMES**
                                        **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MARK SLAY (#102451)**                                          **CIVIL ACTION**

**VERSUS**

**RAMAN SINGH, ET AL.**                                    **NO. 16-0756-SDD-EWD**

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**

Before the Court is Defendants' Motion to Dismiss (R. Doc. 7). This Motion is not opposed.

*Pro se P*laintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Dr. Raman Singh, Dr. Randy Lavespere, Secretary James LeBlanc, Warden Darrell Vannoy and Ass't Warden Stephanie Lamartiniere, complaining that Defendants have violated his constitutional rights by exhibiting deliberate indifference to his serious medical needs, specifically by implementing an alleged unconstitutional policy and by failing to provide appropriate treatment for his inguinal hernia.

In the instant Motion, Defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of Plaintiff's claim asserted against them in their official capacities for monetary damages. In this regard, Defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). *See also Hafer v. Melo*, 502 U.S. 21, 25 (1991) (addressing the

distinction between official capacity and individual capacity lawsuits and making clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment). Accordingly, a claim asserted by Plaintiff against Defendants in their official capacities for monetary damages would be subject to dismissal. Notwithstanding, Plaintiff's Complaint makes clear that his claim asserted against Defendants in their official capacities is solely for declaratory and injunctive relief, not for monetary damages, *see* R. Doc. 1-1 at pp. 11-14, and such a claim for injunctive relief asserted against state officials in their official capacities is not barred by the Eleventh Amendment because such a claim is not seen to be a claim asserted against the state. *See Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 Am. Jur. 2d *Civil Rights* § 101. Accordingly, this aspect of Defendants' Motion to Dismiss should be denied. Plaintiff's claim for monetary damages against Defendants in this case is asserted only against Defendants Raman Singh and Randy Lavespere and is asserted only against these Defendants in their individual capacities, which claim remains theoretically viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Hafer v. Melo, supra*, 502 U.S. at 29.

Turning to a substantive review of Plaintiff's claims, Defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court addressed the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly, supra*, at 555. "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly, supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. (citation omitted). Even a *pro se* complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678. The court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, Plaintiff alleges that he was diagnosed with a left inguinal hernia in April 2014 and that since that time, he has been denied medical treatment that is reasonably necessary for his condition. He asserts that the hernia is large and causes intense daily pain. He alleges that the hernia interferes with and limits all of his daily activities and is tolerable only when he is

lying down and immobile. He alleges that the hernia causes loops of his intestines to descend into his scrotum which causes intense pain. He asserts that the hernia has been diagnosed as being "reducible," meaning that it can be physically manipulated such that any protrusion can be pushed back into his body. Notwithstanding, when his intestines are pushed back into his stomach, they are often twisted or strangulated, such that he must endure substantial pain until gas or the passage of food causes the intestines to become untwisted. He further asserts that this is a dangerous practice and creates a dangerous situation that not only enlarges the hernia over time but can result in strangulation of the blood supply to the intestines such that an emergency life-threatening situation can develop very quickly. Finally, he asserts that whereas he has been seen and evaluated by physicians at LSP, they have refused to recommend surgery solely because the hernia is reducible, and they have refused to refer him for a consultation with a surgeon to evaluate the need for surgical intervention.

In addition to the foregoing, Plaintiff asserts that in 2013, Defendant Raman Singh instituted a new written policy addressing the care and treatment of inmates suffering with hernias who are confined at institutions governed by the Louisiana Department of Public Safety and Corrections. According to Plaintiff, this policy denies surgical intervention to all inmates with reducible hernias and also denies even referrals for surgical evaluation for such inmates. Plaintiff asserts that the reason for this policy is solely because of the cost and expense of surgical intervention were all hernias potentially subject to surgical repair. Plaintiff further asserts that surgical consults are avoided because Defendants have explicitly recognized that once a surgeon has documented the need for surgical intervention, "it is hard to overrule this decision." *See* R. Doc. 1-1 at p. 2. As a result, the policy separates inmates diagnosed with hernias into two categories, with the first being "Reducible Hernia – to be managed non-operatively by primary

care physician at prison," and the second being "Non-reducible Hernia – MD will refer to General Surgery." *Id*. Finally, Plaintiff asserts that even obtaining a necessary surgical referral from an LSP staff physician is obstructed by the policy because "[a] request for permission to send a surgical referral from LSP staff physicians to [Department] Headquarters must first be approved by LSP Medical Director (currently Defendant Randy Lavespere) who then sends the request for surgical referral to [Department] Headquarters where Defendant Raman Singh must then approve the request to submit a surgical referral to the outside facility." *Id*. According to Plaintiff, Defendants utilize this procedure to unreasonably delay authorizations for needed surgery consultations. In addition, Plaintiff asserts that Defendant Singh, the former DOC Medical Director,[1] has established generally four tiers of priority for all specialist, surgery and diagnostic consultation requests, *i.e.*, Level 1 – low; Level 2 – routine; Level 3 – urgent; and Level 4 – emergent, and Plaintiff complains that Defendants utilize these priority levels to further delay the process of obtaining surgical consultations. Plaintiff asserts that whereas he meets the guideline for a specialty care referral, including the large size of his hernia and the daily pain and limitations that he suffers, he has not been referred for a surgical consultation.

In response to Plaintiff's allegations, Defendants assert that they are entitled to qualified immunity in connection with Plaintiff's claims. Specifically, Defendants contend that Plaintiff's allegations are insufficient to establish that they have participated in any violation of Plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process,

---

1  As former DOC Medical Director, Defendant Singh would have potential liability for monetary damages in his individual capacity for the period that he held that position. With regard to the official capacity claim asserted against Defendant Singh, the person succeeding Defendant Singh in that capacity is substituted as the responsible party in accordance with Fed. R. Civ. P. art. 25(d).

operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202. When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009), *citing McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*).

Undertaking the qualified immunity analysis with respect to Plaintiff's claims, the Court concludes that Defendants' Motion to Dismiss should be denied at the present time.

It is well-settled that to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), *citing Estelle v. Gamble*, 429 U.S. 97 (1976). Whether Plaintiff has received the treatment or accommodation that he believes he should have is not the issue because a prisoner's mere disagreement with his medical treatment, absent exceptional

circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). Nor do negligence, neglect, medical malpractice, misdiagnosis or unsuccessful medical treatment give rise to a § 1983 cause of action. *See Zaunbrecher v. Gaudin,* 641 Fed. Appx. 340 (5th Cir. 2016). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, *supra,* 463 F.3d at 346, *quoting Farmer v. Brennan, supra,* 511 U.S. at 847.

The deliberate indifference standard sets a very high bar. Plaintiff must be able to establish that Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006), *citing Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In addition to the foregoing, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith,* 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of

vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768. Supervisory liability can be found to exist if a supervisory official implements a policy so deficient that the policy itself may be seen to be a repudiation of constitutional rights and may be seen to be the moving force behind a constitutional violation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

Applying the foregoing principles, the Court finds that Plaintiff has alleged facts sufficient to support a potential claim of deliberate medical indifference on the part of Defendants herein. First, Plaintiff has alleged that Defendant Raman Singh is responsible for the creation and implementation of an alleged unconstitutional policy that precludes hernia surgeries in all instances in which the hernia is found to be reducible and which policy results in the denial of surgical consultations and/or inordinate delays in obtaining such consultations and in thereafter obtaining needed surgery. According to Plaintiff, this policy has been instituted solely for monetary reasons and not for reasons associated with the medical needs of the inmates or the associated treatable pain suffered by the inmates. Plaintiff further alleges, as to Defendant Randy Lavespere, that this Defendant is charged with the implementation of the referenced policy at LSP

and has been personally involved in examining and treating Plaintiff.   According to Plaintiff, Defendant Lavespere has advised that Plaintiff's condition is not severe enough to warrant surgery and that Plaintiff will just have to "deal with the pain" of his reducible hernia.[2]   Inasmuch as a lack of financial resources cannot be invoked as the sole justification for the denial of an inmate's constitutional rights, *see Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 748, 766 (1992), and inasmuch as even non-life-threatening conditions that result in severe pain may be seen to constitute a serious medical need that requires appropriate medical intervention, *see Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), the Court finds that Plaintiff has adequately stated a potential constitutional claim relative to Defendants.   Finally, as for the remaining Defendants, Secretary James LeBlanc, Warden Darryl Vannoy and Ass't Warden Stephanie Lamartiniere, these Defendants are named herein solely in their official capacities and, as the Secretary of the Louisiana Department of Public Safety and Corrections, the Head Warden at LSP, and the LSP "Medical Warden," respectively, these parties are appropriately retained herein for the purpose of implementing any prospective injunctive relief that may be found to be appropriate.

Whereas Defendants are correct that (1) Plaintiff's mere disagreement with determinations made by qualified medical personnel relative to appropriate care and treatment for his condition does not generally support a constitutional claim, and (2) a failure to refer an inmate plaintiff for additional treatment, diagnostic testing or evaluation is generally a matter of professional medical judgment that the courts will not normally second-guess in the context of a claim of deliberate

---

2   The Court notes that there is some ambiguity in Plaintiff's allegations inasmuch as he asserts that at some point, he was advised by LSP medical staff that "a request for outside surgical procedure has been submitted for review" at the Department level, *see* R. Doc. 1-1 at p. 6, and that he was advised by Defendant Lavespere in July 2015 that the Defendant would place Plaintiff's name on a "Hernia Backlog List" for surgery at "some indefinite point in the future."   *See id*. at p. 9.

medical indifference, *see Cuellar v. Livingston*, 321 Fed. Appx. 373, 374 (5th Cir. 2009), Plaintiff's allegations relative to the alleged denial of appropriate care and the alleged existence of unconstitutional policies are sufficient at this stage of the proceedings to overcome these general rules.  In addition, whereas Defendants seek to rely upon reported decisions wherein judgments were granted in favor of prison medical personnel who denied or delayed surgical intervention in cases of reducible hernias, these decisions, for the most part, have been decided on motion for summary judgment or after hearings that have included the evaluation of evidentiary submissions. *See, e.g., Barrett v. Mississippi Dept. of Corrections*, 427 Fed. Appx. 349 (5th Cir. 2011) (bench trial); *Clark v. Adams*, 233 Fed. Appx. 400 (5th Cir. 2007) (evidentiary hearing); *Jones v. Schmidt*, 2014 WL 6772493 (M.D. La. Dec. 1, 2014) (summary judgment); *Mesa v. Kasule*, 2013 WL 2151706 (E.D. Tex. May 15, 2013) (evidentiary hearing); *Vallado v. Segovia*, 2012 WL 1424982 (S.D. Tex. Apr. 24, 2012) (summary judgment); *Lopez v. Hanson*, 2011 WL 2472603 (E.D. Tex. June 20, 2011) (summary judgment).   In the instant case, the Court does not have before it either the written policies referred to by Plaintiff in his Complaint or any of Plaintiff's medical records for review.[3]   Accordingly, the Court finds it appropriate to defer a resolution of Plaintiff's claims pending an evidentiary showing on motion for summary judgment that will allow the Court to better evaluate same.

Finally, to the extent that Plaintiff seeks to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law,

---

3    The Court notes in this regard that Defendants have not complied with the Court's Order of January 24, 2017 (R. Doc. 4) that directed Defendants to file into the record of this proceeding documentation pertinent to Plaintiff's claims.

if the claims would substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, the Court concludes that any state law claims would potentially predominate over the federal claims arising under the Eighth Amendment to the United States Constitution. Accordingly, the Court recommends that supplemental jurisdiction be declined in connection with any potential state law claims.

## **RECOMMENDATION**

It is recommended that the Court decline supplemental jurisdiction relative to Plaintiff's state law claims. It is further recommended that Defendants' Motion to Dismiss (R. Doc. 7) be denied and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on March 8, 2018.

*[signature]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**